## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-CV-03197-WJM-MDB

**RALPH MARCUS HARDY,**

      Plaintiff,

v.

**ADAMS COUNTY, a municipality,**
**RICHARD REIGNBORN, Sheriff, Adams County,**

      Defendants.

_____

### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
### PURSUANT TO FED. R. CIV. P. 12(b)(6)

_____

Mr. Hardy asserts one claim for relief under 42 U.S.C. § 1983 for a violation of the Fourteenth Amendment's regulation of the conditions of his confinement arising out of the food served to him during his former incarceration at the Adams County detention facility. Mr. Hardy alleges the food diet served to him was "tantamount to a governmental act of genocide." ECF. No. 06 at 4. Mr. Hardy's claims against Adams County[1] and former Sheriff Reigenborn (in both his individual and personal capacities)[2] suffer from several fatal deficiencies and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

_____

[1] Adams County is a separate legal entity from the Adams County Sheriff. *See Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1218-1221 (10th Cir. 2002) (en banc) (treating a County Sheriff as separate entity from the County for purposes of the employment of deputies). Undersigned counsel provides legal representation to the Sheriff and his deputies pursuant to Colorado's defense and indemnification statutes. *See* Colo. Rev. Stat. §§ 24-10-108 & 118; 29-5-111. Here they file a consolidated motion to comply with Local Rule of Practice–Civil VII.B.

[2] A new Adams County Sheriff, Gene Claps, was sworn in on January 10, 2023, before this action was filed. The new Sheriff will file a notice of substitution under C.R.C.P. 25(d) for Sheriff Reigenborn in his official capacity. Mr. Reigenborn will remain a party in his individual capacity.

## CERTIFICATION PURSUANT TO D.C.COLO.LCivR. 7.1

This motion is exempt from conferral pursuant to D.C.COLO.L.CivR. 7.1(b)(1) and (2).

## FACTUAL ALLEGATIONS

Mr. Hardy is a former inmate at the Adams County detention facility. ECF No. 06 at 4, ¶ 1; *see also* ECF No. 18 (Change of address to Colorado Dep't of Corrections). He was incarcerated at the Adams County detention facility between October 6, 2021 and February 2023. ECF No. 06 at 4(a), ¶ 7; ECF No. 18. Mr. Hardy alleges he arrived at the detention facility largely in good health, but suffering from mild hypertension, sleeping disorders, and elevated sugar levels. ECF No. 06 at 4(a), ¶ 7.

At the time of Mr. Hardy's arrival at the detention facility, and for a period of approximately four months until February 1, 2022, Mr. Hardy was served a "cold sack meal." ECF No. 06, at 4(a), ¶ 8; *id.* at 4(b), ¶ 12. On a daily basis, these meals cumulatively consisted of "twelve slices of white bread, six slices each of meat and cheese, which was on a rotating basis with six packs of peanut butter and jelly, each, three heavily iced pieces of cake, or 9 cookies, three bags of potato chips, and a 1% milk for breakfast." *Id.* at 4(a), ¶ 9. Mr. Hardy alleges these meals were high in caloric intake, saturated fat, sodium, sugar, and carbohydrates. *Id.* at 4(b), ¶ 10. Mr. Hardy alleges that he was unable to purchase healthier alternatives at the commissary because he lacked funds due to having exchanged them with other inmates for coffee. *Id.* at 4(e), ¶ 22.

As a result of eating these meals, Mr. Hardy alleges he rapidly gained weight, had elevated blood sugar levels that rose to diabetic readings, and suffered from extreme hypertension. ECF No. 06, at 4(b), ¶ 11. Eventually, Mr. Hardy's blood pressure dosage was increased. *Id.* at ¶ 15. Medical staff also diagnosed Mr. Hardy as diabetic and placed him on a diabetic diet. *Id.* at 4(c)-4(d), ¶ 18. Mr. Hardy does not allege that he was not provided with the diabetic diet after it was

prescribed by medical staff.

The sack lunch meals were served to all inmates and are alleged to have been served due to mechanical failures in the detention facility kitchen. ECF No. 06 at 4(b), ¶ 12. Mr. Hardy alleges that in doing so, unnamed members of the food service department in the detention facility violated the posted correctional facility meal standards. *Id.* at 4(a), ¶ 8. Mr. Hardy alleges that these meals, although served to all inmates, were specifically targeted at harming inmates over the age of 40, who were more susceptible to the health risks of the diet provided. ECF No. 06 at 4(b), ¶ 13. Mr. Hardy, who was 61 years old at the time, variously likens the diet to "an unconstitutional sentence of death," and "tantamount to a governmental act of genocide." ECF. 06 at 4; *id.* at 4(b), ¶ 14; *see also id.* at 4(c), ¶¶ 16-17; 4(e), ¶ 21.

Finally, Mr. Hardy alleges that Sheriff Reigenborn, as the statutory keeper of the jail, was responsible for ensuring that the mechanical failures that led to the use of sack lunches did not occur. ECF No. 06 at 4(d)-4(e), ¶ 21; *see also id.* at 4(d), ¶¶ 19-20. He also alleges Sheriff Reigenborn was constructively on notice as to the health risks of the diet provided by the food service department because Mr. Hardy submitted an administrative grievance that was acknowledged by a Sheriff's deputy. *Id.* at 4(c), ¶¶ 16-18. As for damages, Mr. Hardy alleges he "can only stall the inevitable sentence of death by changing his diet and exercise," but that would not solve for his increased medical costs or his inability to continue his employment as a truck driver at some point after his release from prison. *Id.* at 4(d)-4(e), ¶ 21.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when its allegations, taken as true, allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court, however, should not accept conclusory allegations without supporting factual averments. *See Ruiz v. McDonell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Mere formulaic recitations of the elements of a cause of action will not suffice to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

I.      **ADAMS COUNTY IS A SEPARATE LEGAL ENTITY FROM THE SHERIFF AND DOES NOT HAVE LEGAL AUTHORITY TO SET OR MODIFY THE FOOD PROVIDED BY THE DETENTION FACILITY.**

Despite the similarity in names, the Adams County Sheriff is an independently elected constitutional officer separate from Adams County, which is a governmental entity controlled by the elected Board of County Commissioners. Colo. Const., Art. XIV, §§ 8 & 8.5; *see Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1219 (10th Cir. 2002) (en banc); *see also Tunget v. Board of County Comm'rs of Delta County*, 992 P.2d 650, 651-652 (Colo. App. 1999) ("Under both the Colorado Constitution and applicable statutes, sheriffs and boards of county commissioners are treated as separate public entities having different powers and responsibilities."). The Sheriff and the County share jurisdictional boundaries, but the County has separate statutory obligations. *See* Colo. Rev. Stat. §§ 30-11-101; 30-11-107. The Sheriff has exclusive statutory authority to hire, train, and fire deputies. Colo. Rev. Stat. § 30-10-506; *see also Myers v. Koopman*, No. 09-cv-02802-REB-MEH, 2011 WL 650328, *31-32 (D. Colo. Feb. 11, 2011). As acknowledged by Mr. Hardy, the Sheriff has exclusive statutory powers as the keeper of the jail. Colo. Rev. Stat. §§ 17-26-101 to 103; *id.* at § 30-10-511 ("[T]he sheriff shall have charge and custody of the jails of the county, and of the prisoners in the jails, and shall supervise them himself or herself through a

4

deputy or jailer."); *see also Sisneros v. Cty. of Pueblo*, No. 09-cv-01646-PAB-MJW, 2010 WL 1782017, at *3 (D. Colo. May 3, 2010); see also ECF No. 06 at 4, ¶ 4 & 4(d), ¶ 20.

The Board is not responsible for, nor can it control, the Sheriff's policies and practices within the detention facility. *See Frazier v. Jordan*, No. 06-1333, 2007 U.S. App. LEXIS 696, 2007 WL 60883, at *6 (10th Cir. Jan. 10, 2007); *Richart v. Bd. of Comm'rs of Boulder Cty.*, 33 P.2d 971, 972-73 (Colo. 1934); *Mullen v. Adams Cty. Bd. of Comm'rs*, No. 21-cv-02398-RM-NYW, 2022 WL 1266618, *15-24 (D. Colo. April 28, 2022), adopted in relevant part, 2022 WL 17261428 (D. Colo. Nov. 22, 2022); *Archuleta v. Adams Cty. Bd. of Cty. Comm'rs*, No. 07-cv-02515-MSK-CBS, 2011 U.S. Dist. LEXIS 95835, 2011 WL 3799029, at *10 (D. Colo. June 14, 2011), adopted, 2011 WL 3809911 (D. Colo. Aug. 26, 2011); *see also Terry v. Sullivan*, 58 P.3d 1098, 1102 (Colo. App. 2002).

Although Mr. Hardy conclusorily references the County at various points in his complaint, the complaint contains no allegations of any overt acts by the County through its Board that contributed to his alleged injuries. In fact, the County is not alleged to have undertaken any conduct at all. Only deputies are alleged to have interacted with Mr. Hardy. As such, the County (or the Board) is not the real-party-in-interest as to the Sheriff's policies or practices within the detention facility or his hiring, training, or supervision of deputies. *See Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (affiliation of state employees or entities is determined by looking to "the real party in interest"). Because the Sheriff is not an agent of the County for purposes of the operation of the detention facility, a *Monell* claim does not lie against the County for the Sheriff's conduct—whether directly or through an "official capacity" claim against the Sheriff.

In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), a plurality of the Supreme Court gave an example where a county would not be liable under *Monell* for a county sheriff's decision:

> Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board[.]

*Id.* at 483, n.12.

Here, Adams County does not and legally cannot control the actions of the Adams County Sheriff or his deputies. *See* Colo. Rev. Stat. § 30-10-506; *Schroeder v. Bd. of County Comm'rs*, 381 P.2d 820, 822-23 (Colo. 1963); *Tunget v. Bd. of County Comm'rs*, 992 P.2d 650, 652 (Colo. App. 2000); *Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1215 (10th Cir. 2002); *Myers v. Koopman*, No. 09-cv-02802-REB-MEH, 2011 WL 650328, *31-32 (D. Colo. Feb. 11, 2011). Neither the Sheriff nor his deputies are employees subject to control by the Board of County Commissioners. As such, any alleged conduct that occurred in the detention facility cannot state a claim against non-participants or individuals who have no control over the participants.

In other words, Mr. Hardy must plausibly allege some "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by [the defendants]–express or otherwise–showing their authorization or approval of such misconduct." *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). "The 'affirmative link' requirement of *Rizzo* means . . . that before a superior may be held for acts of an inferior, the superior, expressly or otherwise, must have participated or acquiesced in the constitutional deprivations of which complaint is made." *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976). Mr. Hardy has alleged no such affirmative link between the County and the Sheriff's deputies named in the complaint–or even that the County legally is the deputies "superior," which it is not as a matter of law.

6

The Sheriff is the real party in interest when it comes to the operation of the detention facility. The Sheriff (and his successors) would be bound by any holding and their statutory powers thereby limited. The fact the County may have an indirect or secondary indemnification duty under a state statute does not alter the analysis. *Lewis*, 581 U.S. at 165 ("The critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab.").[3] The Board has no authority on the issue on the food provided that it can delegate or supervise, nor does it have any other ability to control the Sheriff's decisions in that respect. As such, Mr. Hardy's claims against Adams County, including the claim against the Sheriff in his official capacity (see also II.A below), should be dismissed with prejudice.

## II.   SHERIFF REIGENBORN HAS IMMUNITY FROM MR. HARDY'S CLAIM AGAINT HIM IN HIS INDIVIDUAL CAPACITY, WHICH ALSO FAILS TO STATE A CLAIM UNDER RULE 12(B)(6).

Mr. Hardy's complaint does not contain any allegations of conduct undertaken by Sheriff Reigenborn. Rather, Mr. Hardy alleges Sheriff Reigenborn is liable as the supervisor or employer of the deputies involved with providing him sack lunches for a four-month period.

### A.   Sheriff Reigenborn Is Only Properly Named in His Personal Capacity.

Mr. Hardy purports to name Sheriff Reigenborn in both his personal and official capacity. Subject to the Sheriff's other arguments, however, he is only properly named in his personal

---

[3] One case, *Chavez v. Bd. of Cty. Comm'rs*, 426 F. Supp. 3d 802, 812 (D. Colo. 2019), has held based on Colo. Rev. Stat. § 30-25-104 that a county's ability to raise taxes to satisfy judgments against a sheriff makes any distinction between the county and the sheriff "purely theoretical." *See also Coates v. Adams Cty. Sheriff's Office*, No. 20-cv-01936-STV, 2022 WL 4493972, *42-44 (D. Colo. Sept. 27, 2022) (applying *Chavez* in deputy termination case) (currently on appeal to Tenth Circuit as appeal no.22-1339). Respectfully, on this point *Chavez*'s brief assessment is directly inconsistent with *Lewis* and *Bristol*. It, moreover, misinterprets the underlying statute. That statute does no more than protect a county from having its property liened. Instead, the statute authorizes the county to raise taxes to satisfy either direct judgments or its share of secondary indemnification obligations. It does not effect a constructive merger of two separate constitutional offices.

capacity. Official capacity claims are pass through claims. *See Hafer v. Melo*, 502 U.S. 21, 25-26 (1991). A party may, in certain circumstances, name an agent in his or her official capacity in order to get at an otherwise unnamed or unknown principal. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978). Moreover, such claims presuppose a principal-agent relationship or an act of delegation, which varies on a function-by-function basis. *Id.*; *see also McMillian v. Monroe County*, 520 U.S. 781, 785 & 793 (1997) (county sheriff is not a county's agent for every purpose); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n.12 (1986) (plurality) (same).

Here, however, Sheriff Reigenborn is the principal, not the County. As set forth above, he alone is legally responsible for hiring, firing, training, and supervising deputies, including those who work at the detention facility. He alone is statutorily empowered to be the keeper of the jail. His alleged actions or inactions are his own. In short, he is the supervisory authority. He is not the County's agent for running the detention facility. If he's anyone's agent for this function, he is the State's, which raises Eleventh Amendment issues (*see* III.D below).[4] Attempting to name the principal in his "official capacity," for his own conduct is like attempting to name a local government entity in its "personal capacity." *See*, *e.g.*, *Barrera v. L.A. Cal.*, No. 2:20-cv-03804-JFW (SHK), 2020 WL 4809475, at *12-13 (C.D. Cal. June 29, 2020) ("[A]lthough municipal entity defendants are 'persons' for purpose of § 1983 liability, such entities cannot be sued in an individual capacity."); *Surles v. Andison*, No. 07-CV-13555, 2013 WL 2149132, *6 (E.D. Mich. May 16, 2013) ("[P]laintiff's proposed Amended Complaint is puzzling. For example, alleging that Plaintiff is suing a public entity in its official capacity is confused because the logical inverse

---

[4] There is a circuit split as to whether a county sheriff must be some other entity's agent, such as the State's. *Compare Pellitteri v. Prine*, 776 F.3d 777, 782 (11th Cir. 2015) (county sheriff must be some entity's agent, there the State's) with *Franklin v. Zaruba*, 150 F.3d 682, 685 (7th Cir. 1998) (county sheriff need not be any entity's agent). The Tenth Circuit does not appear to have yet confronted, let alone resolved, this issue.

implies that a public entity could be sued in its individual capacity."). There is simply no need to do so and it adds nothing to the case.

Mr. Hardy might have attempted to name a Sheriff's deputy in his or her official capacity to effectively name the Sheriff in lieu of doing so directly (especially where the policymaker might be unknown). But he did not do so here. Rather, he named the Sheriff as a party in his personal capacity too. Thus, there is no need to simultaneously name the Sheriff or a deputy in an official capacity to reach the Sheriff's alleged supervisory involvement in this case. As such, the official capacity claim should be dismissed.

**B.      Mr. Hardy's Fourteenth Amendment Claim Fails to State a Claim Against Sheriff Reigenborn.**

Mr. Hardy's complaint is devoid an any concrete allegation of conduct actually undertaken by former Sheriff Reigenborn. Instead, Mr. Hardy seeks to impute the conduct of various deputies to Mr. Reigenborn because he was their employer and possessed the legal power to supervise them. Thus, Mr. Reigenborn's personal involvement is limited to his role as a potential policymaker or supervisor. All Mr. Hardy alleges is a conclusory failure to supervise on the part of Sheriff Reigenborn who is the keeper of the jail. ECF No. 06 at 4, ¶ 5; 4(b), ¶ 14; 4(c), ¶ 18; 4(d), ¶ 21. These allegations, however, are insufficient on their face to sustain a claim against Sheriff Reigenborn for the actions of the deputies, which are only ones that are concretely alleged to have occurred between October 2021 and February 2022.

Supervisory authorities may not be sued under § 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). Instead, they may be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690 (footnote omitted). In order to state such a claim, a party must allege sufficient facts to

9

demonstrate that it is plausible (1) that governmental employee committed a constitutional violation; and (2) that a policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

Absent some plausible concrete allegation that Sheriff Reigenborn somehow personally participated in the events that led to service of cold sack meals or adopted a policy directing the service of the cold sack meals, Mr. Hardy fails to state a claim against Sheriff Reigenborn for the conditions of his confinement. The complaint contains no such allegations. To the contrary, it alleges that the food service department violated policy. Nor does the complaint plausibly allege Sheriff Reigenborn had any direct or personal knowledge of Mr. Hardy's circumstances. The fact that a particular deputy reviewed a grievance does not legally constitute constructive notice to the Sheriff personally. Again, former Sheriff Reigenborn cannot be held liable on respondeat superior grounds. Nor is he strictly liable under Section 1983 for the indirect consequences of a mechanical failure at the jail. *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).

Even if Mr. Hardy had alleged such personal participation by Sheriff Reigenborn (or had named a deputy in his or her official capacity), he still would not state a viable cause of action. A governmental actor cannot be held liable under § 1983 for the allegedly unconstitutional actions of its employees if those actions were not in fact unconstitutional. *See Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 (10th Cir. 2001); *see also Webber v. Mefford*, 43 F.3d 1340, 1344-45 (10th Cir. 1994) ("A claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised."); *see also Ireland v. Jefferson Cnty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1227 (D. Colo. 2002) (municipal liability under § 1983 requires an underlying constitutional deprivation).

The Fourteenth Amendment requires a detention facility to provide adequate food and medical care to inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The food need only be "nutritionally adequate." *Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980). Only a substantial *deprivation* of food may state a conditions of confinement claim. *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002); *Fluker v. Fed. Bureau of Prisons*, No. 07-cv-02426-CMA-CBS, 2010 WL 2942691, *29 (May 25, 2010). Inmates do not have a right to hot meals. *See Sawyer v. Jefferies*, 315 F. App'x 31, 35 (10th Cir. 2008); *Fluker*, 2010 WL 2942691 at * 29. Nor, absent a religious accommodation or a medical diagnosis, do inmates have a constitutional right to a certain form of "healthy" meal or balanced diet. *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001); *accord Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980) (food cannot present "an immediate danger to the health and well-being of the inmates who consume it"). Thus, the unnamed deputies and food services workers did not violate constitutional requirements by providing Mr. Hardy with cold sack lunches containing processed foods.

Mr. Hardy does allege that the meal was *more than* nutritionally adequate in that he gained weight. But he does not allege the food was somehow adulterated or spoiled. Eventually he received a diabetic diet based on a medical diagnosis. While the need for a special diet that is medically necessary could be the objective basis for a claim, *see Byrd v. Wilson*, 701 F.2d 592, 594-95 (6th Cir. 1983), Mr. Hardy has not alleged he was denied his prescribed diet. Deputies are neither doctors nor dieticians and they are constitutionally entitled to rely on medical providers to make any necessary medical assessments. *See Key v. McLaughlin*, No. 10-cv-00103-WJM-CBS, 2013 WL 1507950, at *5 (D. Colo. Mar. 19, 2013) ("A correctional officer is generally entitled to rely upon the advice and course of treatment prescribed by medical personnel.") (collecting cases), *report and recommendation adopted*, 2013 WL 1509478 (D. Colo. Apr. 12, 2013).

**C.      Sheriff Reigenborn in His Personal Capacity Has Qualified Immunity from Mr. Hardy's Claim.**

Qualified immunity shields government officials from Section 1983 damages suits and ADA claims so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Hall v. Thomas*, 190 F.3d 693, 696-97 (5th Cir 1999) (qualified immunity is available as defense to ADA claims) and *Gorman v. Bartch*, 152 F.3d 907, 914-16 (8th Cir 1998) (same). When governmental officials assert qualified immunity, they create a rebuttable presumption of immunity from a Section 1983 claim. *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001). The plaintiff then bears the "heavy" burden of establishing that qualified immunity does not apply. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).

The qualified immunity analysis has two elements: (1) Whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendants' alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2008). "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Archuleta*, 523 F.3d at 1283. Clearly established law should not be defined "at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Rather, the dispositive question is "whether the violative nature of particular conduct is clearly established." *Id.* If the plaintiff fails to satisfy any part of the qualified-immunity inquiry, "the court must grant the defendant qualified immunity." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

In determining whether a right is clearly established, a plaintiff must point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented. *See Schwartz v. Booker*, 702

12

F.3d 573, 587–88 (10th Cir. 2012). Thus, it is Mr. Hardy's burden to identify a case where an official acting under sufficiently similar circumstances was held to have violated a claimant's Fourteenth Amendment rights. *See White v. Pauley*, 137 S. Ct. 548, 552 (2017). "The dispositive question is whether the violative nature of the particular conduct is clearly established." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015). To satisfy this element, "existing precedent must have placed the statutory or constitutional question beyond debate." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017).

Here, Mr. Hardy will be unable to point to any Supreme Court or Tenth Circuit precedent construing the Constitutional provision at issue as requiring a County Sheriff to provide a certain form of "healthy" meal or a balanced diet absent a religious accommodation or medical prescription. Sheriff Reigenborn had no basis, let alone a clearly established basis, to believe he was under a duty under the Fourteenth Amendment to accommodate Mr. Hardy's non-medical and non-religious dietary preferences. As such, Sheriff Reigenborn is entitled to qualified immunity and should be dismissed with prejudice from this case.

III.   **IF A CLAIM IS PERMITTED AGAINST THE ADAMS COUNTY SHERIFF IN HIS OFFICIAL CAPACITY, THE SHERIFF HAS ELEVENTH AMENDMENT IMMUNITY FROM SUIT.**

Eleventh Amendment immunity applies not only to a state but also to a person that is an arm of the state. *Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020). While the Supreme Court "has repeatedly refused to extend [Eleventh Amendment] sovereign immunity to counties[,]" *Northern Ins. Co. of New York v. Chatham Cty.*, 547 U.S. 189, 193 (2006), county-level officers, including county sheriffs, can receive Eleventh Amendment immunity when they exercise State, rather than county powers. *See McMillian*, 520 U.S. at 785 & 793 (holding that an Alabama county

13

sheriff was a State, not county, "policy maker" and entitled to Eleventh Amendment immunity when investigating a murder under the state's criminal code). That inquiry is not a "categorical, 'all or nothing'" one, but must be determined in "a particular area, or on a particular issue." *Id.*; *see also Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1220 n.26 (10th Cir. 2022) (same).

As set forth in detail above, county sheriffs in Colorado are independently-elected state constitutional officers with jurisdictional limits tied to a geographic boundary. As such, they serve in a variety of roles. *See Struble v. Barger*, 261 P.2d 497, 498 (Colo. 1953) (referring to the office of the county sheriff serving as both an "executive officer" and an "officer of the court"). Under the Colorado Constitution, law enforcement is executive in nature. *See* Colo. Const., art. IV, § 2 (granting to Governor "supreme executive power of the state" and imposing duty to "take care that the laws be faithfully executed"); *see also Manders v. Lee*, 338 F.3d 1304, 1313 (11th Cir. 2003).

The Adams County detention facility houses pretrial inmates. Incarceration prior to a trial by the state judiciary on a state criminal charge is a State, not local, power. *See*, *e.g.*, *De Veau v. Braisted*, 363 U.S. 144, 153 (1960); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). In accomplishing that task, the Adams County Sheriff is governed by various state statutes and is an instrumentality of the State, not the County. The Sheriff's hiring and firing of Sheriff's deputies is likewise an exercise of State, not local power. *See Pellitteri v. Prine*,776 F.3d 777, 782 (11th Cir. 2015) ("While it may be true that sheriffs alone are authorized to appoint their deputies, they do not exercise that authority for themselves. Rather, sheriffs select deputies to assist them in executing their own duties, which have been delegated to them by the State [of Georgia]. In this sense, sheriffs exercise their power to hire deputies for the State. As a result, even if the State generally stays out of a sheriff's day-to-day decisions about who to hire or fire, the State still maintains a great deal of control.") (citations omitted).

14

By statute, the Sheriff's finances are derived from a variety of federal and state grants, county tax revenue, and fees for services provided. *See*, *e.g.*, Colo. Rev. Stat. §§ 30-10-102(1); 30-10-521. Thus, county sheriffs have Eleventh Amendment immunity in their official capacity for Section 1983 claims arising out of the operation of a detention facility. *See Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1288 (11th Cir. 1998) ("[A]n Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail."); *accord Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007); *White v. Adams Cty. Detention Facility*, 1995 U.S. App. LEXIS 16574, *2-3 (10th Cir. 1995) (acknowledging but reversing grant of immunity for operation of detention facility based on pre-*Twombly* pleading standard); *accord Handy v. Diggins*, No. 10-cv-02022-WYD-KMT, 2011 WL 1743394, *34 (D. Colo. Mar. 23, 2011) (granting Denver Eleventh Amendment immunity for the operation of its jail).

Nor has Colorado waived Eleventh Amendment immunity from suit for county sheriffs. Although the Colorado Supreme Court labels the immunity both provided and waived by the CGIA as "sovereign immunity," *see Martinez v. Estate of Bleck*, 379 P.3d 315, 317 (Colo. 2016), the Tenth Circuit has held it is still only "statutory immunity" and "not . . . Eleventh Amendment immunity." *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1222 (10th Cir. 2019). In *Griess v. Colorado*, the Tenth Circuit held the CGIA, "particularly Colo. Rev. Stat. §§ 24-10-104 and 106, does not effect a waiver of the state's constitutional immunity to suit in federal court." 841 F.2d 1042, 1044-45 (10th Cir. 1988). Thus, if the Court otherwise permits an official capacity claim against the Sheriff to proceed forward, it is nevertheless barred by the Eleventh Amendment.

## CONCLUSION

For the foregoing reasons, Mr. Hardy's claims against Adams County and Sheriff Reigenborn in both his personal and official capacities should be dismissed with prejudice.

DATED: March 27, 2023.

Respectfully submitted,

*s/Michael A. Sink*
Michael A. Sink
Assistant County Attorney
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org

*Counsel for Defendant*
*Adams County*

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2023, I caused the forgoing to be electronically filed with the Clerk of the Court using the PACER system; I further certify that I sent a copy of the foregoing to *pro se* Plaintiff Ralph Hardy via U.S. mail, postage prepaid, to:

Ralph Marcus Hardy
#110262
D.R.D.C.
P.O. Box 392004
Denver, CO 80239-8004

*s/Michael A. Sink*
Michael A. Sink
Assistant County Attorney
4430 S. Adams County Pkwy
5th Floor, Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org

*Counsel for Defendant*
*Adams County*

17