IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.: 22-CV-03197-WJM-MDB



FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 10 2023

JEFFREY P. COLWELL
CLERK

**RALPH MARCUS HARDY,**
  **PLAINTIFF**

VS

**ADAMS COUNTY, a Municipality,**
**RICHARD REIGENBORN, in his individual and Official Capacity (Sheriff of Adams County Colorado)**
  **DEFENDANT'S**

## PLAINTIFF HARDY'S RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

1.    The Plaintiff, Ralph Marcus Hardy, Pro Se, here by files his response to the Defendant's Rule 12(b)(6) motion to dismiss and states as follows:

2.    In this case, Mr. Hardy filed a Fourteenth Amendment Claim for Relief against Defendant's Adams County, a Municipality, and Sheriff Richard Reigenborn in his official and individual capacity. Richard Reigenborn is no longer the elected sheriff of Adams County Colorado. Moreover, Defendant Reigenborn left office prior to being personally served with the 1983 complaint. In this case, elected Adams County Sheriff, Gene Claps should be substituted in place of Sheriff Richard Reigenborn. However, Richard Reigenborn should still remain a defendant in this case, in his individual capacity, not yet served by the U.S. Marshalls.

3.    Pending in this Honorable Court is an additional 1983 action, in case number 22-CV-02843-WJM-MDB. In that case, the county attorney is representing Defendant Reigenborn in his individual capacity, and is in constant contact with Defendant

1

Reigenborn regarding the individual capacity claims made against him in that case. Mr. Hardy contends, even though Defendant Reigenborn has not been personally served the 1983 claims made against him in this case for purposes of the individual capacity claims, the fact that the same County Attorney's Office is representing him in his individual capacity in 22-CV-02843-WJM-MDB should be considered sufficient notice of the claims filed against him in this case, and should supersede any further need for service of process regarding the instant complaint.

4.   Learned counsel for the Defendant's in this case have filed a boilerplate Rule 12(b)(6) motion to dismiss the claim in this case. Specifically, learned counsel couches their motion to dismiss on the premise that the Defendant's did not violate Mr. Hardy's Fourteenth Amendment right to protection against 'Cruel and Unusual Punishment' when they intentionally and maliciously caused permanent irreparable injury to his person by continuing a diet that they knew or reasonably should have known was an illegal and vicarious sentence of death to Mr. Hardy; and various other inmates being detained in the Adams County Detention Facility, between October 6, 2021 and February 2, 2022.

5.   The Defendant's claim that Mr. Hardy's complaint fails to state a claim under the Fourteenth Amendment. Specifically, defendant's claim that the intentional disregard of the known or obvious risk of harm the diet posed to Mr. Hardy's safety and well-being is irrelevant so long as the food being provided to Mr. Hardy, and the other detainees at the Adams County Detention Facility ("ACDF") was nutritious. Specifically, defendants contend that, even though the diet was responsible for causing the known or obvious life threatening medical complications to Mr. Hardy and the rest of the inmate population

2

at ACDF, that the vicarious sentences of death are negated by the fact that the inmates were being fed "nutritious" food. This theory is simply not viable under Rule 12 (b)(6) Fed. R. Civ. P.

**Rule 12(b)(6)**

6. The purpose of a Rule 12(b) (6) motion to dismiss is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true".

*Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). The Subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety.' To prove deliberate

indifference, a prisoner must adduce sufficient facts to show the defendant knew of and disregarded 'an excessive risk to inmate health or safety.' Under this standard, 'the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference.'" Brooks v Colorado Department of Corrections, 12 F.4th 1160, 1173 (10th Cir. 2021) (citations omitted)

7.  Mr. Hardy contends, that, in toto, his complaint sufficiently alleges a Fourteenth Amendment claim for relief against the Defendant's

8.  First, Mr. Hardy's complaint sufficiently alleges that the diet he was being served posed a known or obvious risk of harm to his personal safety and well-being that Sheriff Reigenborn intentionally disregarded and ignored. **(DOC 06 *14)**.

9.  Second, Mr. Hardy's complaint sufficiently alleges that he filed for administrative remedies when the symptoms and complications from the diet began to show, in the form of extreme hypertension and diabetic readings. **(DOC 06 *15-16)**.

10. Third, in response to Mr. Hardy's administrative remedy request, ACDF Food Service Director Sioux Rodriguez responded to the grievance, affirming the claims made by Mr. Hardy, that the diet was unhealthy; was causing hypertension; diabetes; and was effectively killing Mr. Hardy and the rest of the inmate population being detained in the ACDF. **(DOC 06 *17)**.

11. Fourth, Mr. Hardy's complaint sufficiently alleges that the Defendants continued to serve the diet they knew was dangerous to Mr. Hardy and the rest of the inmate population, for an additional 84 days after actual or constructive notice of the diets

known or obvious risks to the personal safety and wellbeing of the inmate population. **(DOC 06 *18).**

12.     Lastly, Mr. Hardy's complaint sufficiently alleges that the diet was the result of a policy, custom or practice promulgated by Sheriff Reigenborn, a *final* decision making authority for Adams County, the ACDF, and the Adams County Sheriff's Office. Specifically, Sheriff Reigenborn promulgated, created, implemented, endorsed or was otherwise responsible for the continued operation of a policy, custom or persistent practice of inadequate maintenance and supervision of the ACDF, which was the driving force behind the unconstitutional conditions of confinement in the ACDF. Moreover, the Defendant's knew, or reasonably should have known that their actions or failure to act, to adequately supervise and maintain the ACDF in proper working order would result in a constitutional violation. **(DOC 06 *20).**

**Conditions of Confinement**

13.     The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Prison conditions may be "restrictive and even harsh," see *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981), but "[u]nder the Eighth Amendment, [prison] officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of *adequate food*, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001). "An inmate raising an Eighth Amendment conditions-of-confinement claim must prove both an objective and subjective component associated

5

with the deficiency. The objective component requires conditions sufficiently serious so as to (1) deprive an inmate 'of the minimal civilized measure of life's necessities' or (2) subject an inmate to 'a substantial risk of serious harm.' Mr. Hardy's complaint meets the second prong of the test.  In addition, Mr. Hardy's complaint specifically alleges he suffered a lifelong handicap, as well as life lasting harm or injury. **(DOC-06 *18-19).** Moreover, Mr. Hardy has well pleaded and established the culpable state of mind of the Defendants, who continued to serve the diet they knew was causing life threatening medical conditions. Moreover, the answer to Mr. Hardy's grievance from the food service director, [*that confirmed, the diet was unhealthy and was causing life threatening medical complications*] was sufficient notice to Adams County and Defendant Reigenborn, [*November 10, 2021- DOC-06 *17*] that the diet was a risk to Mr. Hardy's health, safety and well-being, as it was to the rest of the inmate population; and should have been stopped immediately and replaced with an alternate diet. Rather, the Defendant's intentionally disregarded the known or obvious risks of harm the diet posed to the inmate population. **(DOC-06 *17).** Specifically, the Defendant's failed to acknowledge their own food service departments findings and warnings about the diets health dangers. In fact, the defendant's continued to serve same diet they were told was a health hazard, to the inmate population at ACDF, for an additional 84 days following the actual or constructive notice of the diets health dangers. **(DOC-06 *18).** Clearly, this establishes that the Defendants were on notice of the diets known or obvious danger to Mr. Hardy's personal safety and well-being, and completely disregarded that risk, causing Mr. Hardy to develop a life threatening diabetic medical condition, and further complicate a pre- existing hypertension disorder as well. The deliberate indifference

6

standard is clearly met in this case. Despite the two- tiered system of justice that is currently plaguing our great country, it is clearly evident that the Defendants in this case want this court to protect their clients malicious and deliberate disregard for Mr. Hardy's personal safety and well-being while he was being detained in the ACDF. However, reasonable jury would be able to easily determine that the Defendants were constitutionally deliberately indifferent to a better need for maintenance and supervision of the ACDF in order to prevent Mr. Hardy and the inmate population from repeatedly wearing dirty clothes; having no hot water for weeks at a time; a leaking roof that caused the destruction of Mr. Hardy's personal and legal property; and has caused a serious black mold problem throughout the facility, which is still a health risk to the inmate population, to this day; not to mention the broken and dysfunctional food service department that caused the diet that has claimed Mr. Hardy's quality of life in its wake. These unconstitutional conditions of confinement are sufficiently pleaded in the amended complaint, and are ripe for a jury determination.

**Municipal Policy**

14.     To establish municipal liability under 1983, a plaintiff must show that execution of the municipality's policy or custom caused the alleged constitutional deprivation. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *see also Brown*, 923 F.2d at 1479 ("It is well established that a municipality may be held liable under 1983 only when the deprivation at issue was undertaken pursuant to city 'custom' or 'policy,' and not simply on the basis of *respondeat superior*."). In *Pembaur v. City of Cincinnati*, the Supreme Court articulated the following three-part test for determining when a single act of a municipal officer

7

subjects the municipality to liability under 1983: "(1) acts which the municipality officially sanctioned or ordered; (2) acts of municipal officers with final policy-making authority as defined by state law; and (3) actions taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area." *Manor Healthcare Corp.*, 929 F.2d at 637 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83, 106 S. Ct. 1292, 89 L. Ed. 2d 452 & n.12 (1986)).

15.     The Court in *Pembaur* also made clear that "[t]he fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." 475 U.S. at 481-82. Rather, "municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481. In other words, for a municipality to be held liable, it is not enough that the official who inflicted the constitutional injury possess final authority to act on behalf of the municipality. Instead, that official must "also be responsible for *establishing final government policy respecting such activity* before a municipality can be held liable." *Manor Healthcare Corp.*, 929 F.2d at 637 (citing *Pembaur*, 475 U.S. at 481-82) (internal quotations omitted) (emphasis added); *see also Quinn v. Monroe*, 330 F.3d 1320, 1326 (11th Cir. 2003) ("The 'final policymaker' inquiry addresses who takes actions that may cause the municipality [here, Defendant Adams County] to be held liable for a custom or policy.") Since Sheriff Reigenborn (Gene Claps) is a final policy maker for Adams County, and the final policy maker for the ACDF, as well as the Adams County Sheriff's Office, ("ACSO"), it is clear that the Sheriff of Adams County is ultimate policy making authority for the ACDF and the ("ACSO"). Defendants do not contest that the elected

Adams County Sheriff is a final decision making authority for not only Adams County, in regards to this case, but they do not contest that the elected Sheriff of Adams County Colorado is the one and only final policy maker for the County run Detention Facility; and the Sheriff has no report channel to the Board of County Commissioners, except for his deputy's pay rate approval. Specifically, the Sheriff needs no approval from the Board of County Commissioners regarding jail policy, customs or practices.

**Policy Custom or Practice**

16.   The Tenth Circuit has established that a municipal policy or custom "may take one of the following forms:" (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Waller v. City & County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted).

 Municipal liability under 1983 "may be based on an informal 'custom' so long as this custom amounts to 'a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law."'" *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112,

9

127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)). "The custom or practice giving rise to liability must be 'so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019) (citation omitted). To establish a custom within the meaning of 1983, "plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City & County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). In his amended complaint, Mr. Hardy alleges a "policy" "custom" and "pattern" of inadequate maintenance and supervision of the ACDF that not only affects the entire inmate population, but the conditions of confinement regarding the black mold that plagues the detention facility causes ACDF staff to make repeated remarks about their own personal safety. Mr. Hardy's amended complaint sufficiently alleges that the continued failure to properly mechanically maintain and supervise the ACDF was the proximate cause of the food service department from being functional to the point that it prevented the ACDF food service department from functioning normally, which was the driving force behind Mr. Hardy's medical complications. Moreover, the continued operation of the custom, policy, or practice of inadequate maintenance resulted in Mr. Hardy and the rest of the inmate population having to wear dirty underclothes and other unlaundered clothes for over a month and a half at a time. Plaintiff's complaint also alleges that he and the rest of the ACDF inmate population often go without hot water for weeks at a time, preventing showers to the inmate population. Plaintiff sufficiently alleges that there is a black mold problem due to a

leaking roof that allows water to leak into the inmate cells, destroying personal purchased canteen property. (**DOC-06 \*20).**

## Causation

*17.* To establish municipal liability, a plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). The Tenth Circuit has interpreted the causation element to mean that "the challenged policy or practice must be 'closely related to the violation of a plaintiff's federally protected right.'" *Schneider*, 717 F.3d at 770 (citation omitted). "This requirement is satisfied if the plaintiff shows that 'the municipality was the "moving force" behind the injury alleged.'" *Id.* (quoting *Brown*, 520 U.S. at 404). Mr. Hardy's amended complaint sufficiently establishes that the Defendants continued failure to adequately mechanically maintain and supervise the ACDF is what caused the unconstitutional conditions of confinement; and was the moving force behind the injuries he sustained. *Id.*

## State of Mind

*18.* The requisite state of mind that a plaintiff must allege to successfully state a claim of municipal liability under 1983 may vary depending upon whether the plaintiff alleges that the municipality acted pursuant to an unlawful policy or custom, or whether an unlawful action was taken pursuant to a facially lawful policy or custom. *See Brown*, 520 U.S. at 405-07 (discussing the applicable state of mind standards for 1983 claims); *Schneider*, 717 F.3d at 770 (discussing the "deliberate indifference" standard). In either case, "the prevailing state-of-mind standard for a municipality is deliberate indifference regardless of the nature of the underlying constitutional violation." *Schneider*, 717 F.3d

at 771 n.5 (citation omitted). In their motion, Defendants assume that the applicable state of mind standard is deliberate indifference. Plaintiff only mentions deliberate indifference as it pertains to an Eighth Amendment claim for failure to mechanically maintain the County Detention Facility, which makes conditions of confinement at the ACDF unconstitutional. Nevertheless, this court should apply the prevailing standard of deliberate indifference to Plaintiff's municipal liability claim.

19. The Tenth Circuit has explained how deliberate indifference may be established: The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction[.] *Schneider*, 717 F.3d at 771 (citation omitted). Plaintiff makes specific *state of mind* allegations in his cause of action for violation of his civil rights under 1983. Plaintiff alleges that Defendants acted with "deliberate indifference" by disregarding the obvious effects of failing to keep the County Detention Facility in proper working order, and disregarding a known risk to Mr. Hardy's personal health and safety; and the health and safety of the entire ACDF inmate population, by failing to keep the jail safe and wholesome in accordance with the defendant's statutory duty of care pursuant to the *Colorado Revised Statute*: 17-26-102. In addition, plaintiff's allegations, that Defendants engaged in the intentional act of continuing to serving the diet for 84

more days after being placed on notice that the diet was the cause of life threatening medical complications to Mr. Hardy and other inmates in their care, *[by their own food service supervisor's admission]* is sufficient to establish a "pattern of unconstitutional behavior," or as an action or inaction for which the violation of Mr. Hardy's constitutional rights is a "highly predictable or plainly obvious consequence." See Schneider, 717 F.3d at 771 (citation omitted).

**Conclusion**

20.     Clearly, Plaintiff Hardy's Amended Complaint sufficiently states plausible facts and allegations to support a claim for which relief may be granted. What learned counsel has failed to realize in this case, is that, there is a *well settled natural law of the land,* that even too much of a good thing can be harmful to a person's health and safety. Specifically, just because a diet may have some nutritional value and sustain life in Adams County Detention Facility, the repetitive consumption of this particular diet was clearly, and admittedly unhealthy. Moreover, it was specifically detrimental to the health, safety and well-being of the entire inmate population at the ACDF, that went completely ignored by the Defendant's, even after their own food service director made it clear, in the administrative grievance process, that the diet was killing Mr. Hardy and the entire inmate population in the ACDF. Differently put, the Defendant's completely disregarded the known or obvious risk of harm to Mr. Hardy and the rest of the inmate population; and continued to serve the diet they knew was responsible for causing life threatening complications, resulting in many inmates obtaining an unconstitutional pre-mature sentence of death, because of the unconstitutional conditions of confinement that the

13

Defendant's created inside the ACDF… Therefore, the Defendant's motion to dismiss under rule 12(b)(6) should be denied.

Dated this 6th day of July 2023.

Respectfully Submitted,

*[signature]*

Ralph Marcus Hardy #110262

BCCF
11560 County Rd. FF-75
Las Animas, CO  81054

14

Ralph Handy 115262
BCCF
11568 County Rd. FF-75
5-G-108B
Las Animas, Co. 81054

LEGAL MAIL
JUL 07 2023

Legal Mail
22-CV-03197-03M-MDB

Clerk of Court
United States District Court
901 19th St. Room A-105
Denver, Co. 80294-3589

LEGAL MAIL
JUL 07 2023

LEGAL MAIL
JUL 07 2023



US POSTAGE $001.74
ZIP 81054
JUL 07 2023

| | |
|---|---|
| BCCF | 7/7/23 |
| FACILITY | DATE REC'D |
| Sales | 87/8/30  GS |
| DOC EMPLOYEE LAST NAME | ID #  INT |
| 110262 | HARDY  RW |
| DOC # | OFFENDER LAST NAME  INT |